Mr. Hufford, we'll hear from you first. Thank you, Your Honor. I would like to reserve three minutes for rebuttal. You may reserve it, but the clock will keep running, so you'll have to sit down if you want to reserve it in at that time. Understood. Go ahead. ERISA is often complicated, but the Article III question before this Court is simple. Whether the Court should even entertain Plaintiff's claim that they did not receive ERISA-protected health care benefits because the funds were diverted by United for its own use. The answer should also be simple, that of course Plaintiffs should at least have their day in court. United served here as the administrator for self-funded plans on behalf of the plan that was providing health care benefits for Ms. Gannon and Ms. Smith. And in that role, United determined the benefits that were due. For example, United determined that Ms. Gannon was entitled to $8,000 in benefits for out-of-network services that she received. In the normal process, United would process the claim, determine the benefits, and then would take the $8,000 from the self-funded plan and send it directly to Ms. Gannon or at her request to her provider. But that did not happen here. Instead, United kept the money for itself without agreement of Ms. Gannon or the doctor, and it did so based on its unilateral and disputed assertion that the doctor had previously been overpaid for services provided to a different patient and insured under a different plan. The Plaintiffs appealed, claiming they did not believe their claims were processed properly, and those appeals were denied. So they sued as they're entitled to under ERISA. They alleged that they did not receive the benefit payments owed to them, but that instead United had engaged in an illegal cross-plan offset, something that the Department of Labor has deemed to be a prohibited transaction under ERISA. And that's because funds were taken from one self-funded plan, and instead of being used to benefit the beneficiaries of that plan, it was taken by United to benefit itself. You know, one of the ways the case could be envisioned is that at this point the plan may have suffered harm, but no concrete harm has been suffered by the named participant, right? Because the named participant has not been billed or denied or not been to United's service and hasn't been billed for the additional cost. And that that harm is not sufficiently concrete to give rise to standing. And why is that wrong? Yeah. And I believe that's entirely wrong under the precedence of this Court, Your Honor. In the Mitchell case, for example, the Court's held the Plaintiffs suffer injury in fact when they plausibly allege that they have not received the ERISA benefits to which they are legally entitled. And that's regardless of what balance billing. In the Mitchell case, there's no chance of being balance billed. It also didn't matter if they had assigned the benefit to be paid to the provider. By alleging that you've been — that you were not — did not receive the benefits you were entitled to, that is sufficient injury. It's also critical that when evaluating a standing, the Court has to assume the merits of the arguments by the — by the Plaintiffs. That comes from the American Farm Bureau case of the Eighth Circuit, as well as many other cases. In this case, our allegation is that even though there was plain language that arguably could be interpreted to allow United to do cross-blind offsets, that United could not apply those terms because they were prohibited transactions. In the Eisenrich case in the Eighth Circuit, for example, the Court held that a fiduciary cannot make decisions that are inconsistent with Federal law. And in that case, for example — But don't you still have to show an injury to establish standing? Well, yes. But the injury here, Your Honor, is instead of receiving the $8,000, and sort of from Ms. Gannon's perspective, we're arguing that she should have gotten $8,000 to pay her doctor bill. Instead of receiving the $8,000, her doctor received a notice that said, we're not paying you. Instead, we're using it to apply to a debt that you dispute. But the doctor hasn't sought payment from her, correct? That's — has not yet sought payment from her. Well, I mean, what's the record show about the practice and pattern here? I mean, that doesn't happen under these plans, is that correct? Well, there's — You're suggesting it might happen someday, but I don't believe there's any evidence in the record that suggests that that's occurred. Well, of course. There was maybe two or three mistaken billings that I think have been resolved. But — Well, keep in mind that this is just on the pleadings. Sure. There's no record yet. But under Mitchell, it made very clear in Mitchell the provider had actually signed an agreement that said, we're not going to bill you. We're simply going to take whatever the judge might provide in this litigation. We're not billing you anything. And the Eighth Circuit had no problem — this Court had no problem saying that you nevertheless have standing. Because many courts have held the injury comes from the alleged failure to get the benefits to which you're entitled. And our contention is they cannot rely on cross-plan offsets because those are prohibited transactions. And so when you're reading the plan, they had to read it in a manner that's consistent with ERISA. Consider, for example — and this is outlined in Mitchell, but in many cases — when the Eighth Circuit are considering whether a denial was reasonable under ERISA, they consider five factors. Only one of those factors is the plan language itself. And that's all the district court relied upon, the plan language. Another factor is whether interpreting the plan language was consistent with ERISA statute itself. Our argument is if you consider the ERISA statute, you cannot allow a cross-plan offset to be used because it's a prohibited transaction. That means that our plaintiffs did not get the benefits to which they were entitled. And again, we're talking here about getting cash versus a disputed offset. And it's critical to recognize it's not just the Eighth Circuit in Mitchell, but in many other circuits have held that to have a claim under ERISA and to have In this case, our plaintiffs are still at risk. The providers have not waived it. There's nothing to indicate they've waived it. But more importantly, they don't have to for the plaintiff to say they've been injured because they did not get the benefits they were entitled to. Consider, for example, the Peterson case. Five years ago, this Court considered a challenge to cross-plan offset policy by United. In that case, the Court didn't have to reach — it was a summary judgment, so it was beyond the pleadings. It did not have to reach the merits of the case because — of whether cross-plan offsets violated ERISA, because the question is whether the plans allowed it. Nevertheless, the Eighth Circuit held that the legality of cross-plan offsets is at least questionable. And we're simply saying that our plaintiffs should be entitled to raise that issue. But more importantly, in Peterson, the Court held that the doctor had standing to sue in the name of the patients. The doctor wasn't suing on his own behalf. Dr. Peterson in that case was suing — pursuant to an authorization to sue in the patient's name. And so you have to think of it this way. That would mean that our plaintiffs, Ms. Ganim and Ms. Smith, should have had standing under ERISA to designate their providers to sue for them, and this claim could have got proceeded. Well, it's absurd, in my view, to suggest that the provider could sue in the name of the patient, but the patient cannot sue in their own name. Well, the people in that case were suing on the theory that the plan didn't authorize. Correct. But the plan here does authorize it. So you're trying to say that we should treat the plan as though it didn't authorize it because it violates ERISA to authorize it. That's exactly right. And under Eisenrich, or even under ERISA itself, because 29 U.S.C. 1104 that lays out the fiduciary standard says that a fiduciary, like United, has to first make benefit decisions for the exclusive purpose of the beneficiaries of that plan, not for itself, but, moreover, must apply plan terms unless doing so would violate ERISA. So, again, ERISA actually trumps. If ERISA was violated by plan terms, you can't apply it. But I also want to press back a little bit on the assumption that the plan language permits ERISA. Well, haven't we found that it violates plan terms? I mean, we've suggested it comes close. Yes. But I agree there's been no ruling yet on the merits of that. You said it came close. We're simply suggesting we should be entitled to our day in court to have the Court decide does it violate ERISA, and, therefore, was it improper to impose a cross-plan offset. But in order to get your day in court, you have to allege adequately an injury. And, frankly, Your Honor, I have a hard time seeing how this could be reconciled with Mitchell or the other line of cases that say sufficient injury is alleging that you did not get the benefits to which you were entitled. We're claiming we're entitled to the $8,000, not an offset. But entitled under the terms of the plan, right, in those cases? In those cases, yes. But I would – but there's plenty of other cases that say, but when you're interpreting the plan, you can't interpret them in a way – you can't interpret provisions that violate ERISA. So it really is part of the same analysis. Now, I also want to push back a little bit. Our case doesn't depend on this, but even the decision that the – that the plan language allows a cross-plan offset, I think that's an open issue as well. It does say that United can apply an offset if there's a debt owed to the provider. But we would suggest there's no debt here. What does it mean to say there's a debt? United is unilaterally asserting it overpaid it. Our doctors say there was no debt. They say they were not overpaid. So the mere fact that United is asserting it does not make that a legal debt that would allow them to – to apply this offset. That's even under the plan language you have. But moreover, to the extent that that offset is a prohibited transaction – and again, the Department of Labor in their amicus brief in Peterson was very clear on that. If you take money from one plan that's supposed to be used to benefit those plans' beneficiaries, and instead of using it for that purpose, the fiduciary uses it to benefit themselves, because this is money that went back to United for fully insured plans, that is prohibited. It doesn't matter if it's agreed to by the plan. It's a prohibited transaction that cannot be done. And if that's the case, then that means when the court is interpreting the plan language, it cannot interpret it to allow the cross-plan offset. And when you look at the additional issue of injury is what is the value. If you think about the GameStop case, for example, what the court said was it doesn't have to be money. It can be a different value. And the court in GameStop said that the Article III injury existed because a game subscription that had poor privacy protection was inherently less valuable than a game subscription that had very strong privacy protection. Even if there is no privacy problem for the plaintiff, that gives it value of sufficient injury. In this case, what we're talking about, think about Miss Gannon, I had the choice of getting $8,000 in cash to pay my doctor. There's no question his bill has been paid, versus my doctor receives a notice that says you're not receiving $8,000, but we're offsetting it against a debt that you disagree with. I don't think it's in the low threshold we have for Article III standing. I think it's impossible to suggest that that has the same value. Our argument is they're entitled to the money, and getting a disputed, we would argue illegal cross-plan offset is simply not the same value. So even on that basis, we think there's sufficient injury here. That would allow it to be established. And again, when you look at Peterson, or you look at the Thole case, for example, the Thole case said there's no injury because of the fact that it had no impact on how the benefits were paid. In that case, the administrator was stealing money from the plan, but because it was a — the nature of the plan, the beneficiaries were still getting the same amount of money every month. So they were not impacted by the fiduciary breach. In our case, in the absence of the fiduciary breach, the cross-plan offset, the patients would be getting cash. But with that breach, they're not getting cash any longer. Now they're simply getting a notice to the doctor saying, we're taking the money because we think you owe a debt, even though you dispute it. That is not at all the same thing. And I think here the — Kennedy. Well, what would they — they would get cash, or the cash would go to the doctor? Well, yes. I mean, as was clearly held in Mitchell and in other cases — Either way, the — as I understood it, either way, the patient is not taking home any cash. No, correct. But under ERISA, it's their benefit. It's their money, and they're using it to pay their doctor. And obviously, they directed it — previously, if they had not authorized it to go to the doctor, they would have gotten the cash. They would have been responsible to pay. But isn't it — but they asked United to pay the doctor. But it's still the benefit that is owed to the plaintiff, to the patient under ERISA. And that's really the argument that we are making. And if you consider in the Smith case — and that's an interesting one. I realize I'm getting over my time for the rebuttal. But in the Smith case, Judge Schultz, who's the same judge who was held by the Eighth Circuit in Peterson, considered a case challenging the exact same cross-plan offset problem. But there, the patients had not been subjected to offsets. And the Court said, like in Thole, the patients in Scott had not alleged they had not gotten the benefits to which they are denied. And Judge Schultz said, had you alleged that, that clearly would have been Article III injury. And he said the glaring problem for the patients there was they had not gotten — been subjected to a cross-plan offset. We have, and at a minimum, these plaintiffs should be entitled to appear in court to argue that that was inappropriate. I'll keep the rest of my time for rebuttal. Thank you, Your Honors. Very well. You may. Thank you for your argument. Mr. Jacob, we'll hear from you. May it please the Court. Gregory Jacob for the Appley United. This Court should affirm the district court's determination that plaintiffs lack Article III standing because it is clear on the face of the complaint that plaintiffs have suffered no injury in fact that is concrete, particularized, and actual or imminent based on the conduct alleged in the complaint. Plaintiffs present two primary theories of standing. I'll address their argument based on benefit of the bargain standing first, and their argument based on the allegedly diminished value of plan benefits that are paid by offset second.  At the outset, I want to highlight three key facts that are alleged in the amended complaint and that frame the analysis of each of these theories of standing. First, the amended complaint acknowledges that both plans expressly state that benefits that are directed to providers can be paid either in cash or through debt cancellation. It's at paragraphs 10, 31, and 50. And that the providers for both plaintiffs were paid through a combination of cash and debt cancellation. It's at paragraphs 66, 86, and 93. Second, both providers received statements of account from United that showed that the allowed benefit amounts were paid in part through debt cancellation. And the providers did nothing at all over a period of nearly two years to seek cash from plaintiffs in lieu of that debt cancellation. And third, billions of dollars in benefits, according to the allegations of the complaint, paragraph 3, have been paid to providers in precisely this form without plaintiffs identifying even a single instance of a provider ever demanding a cash payment from a plaintiff in lieu of debt cancellation. Turning to the benefit of the bargain-standing theory. So the first component of standing under Article III requires that an injury in fact must be concrete and particularized and actual or imminent, not conjectural or hypothetical. The Eighth Circuit in both Mitchell and Carlson held that a broken promise is in and of itself a concrete and particularized injury. That's page 909 of Carlson. Plaintiffs, the parties to a contract are the masters of their own contract, and a broken promise is all that is required to establish that. But entirely unlike Mitchell and Carlson, the district court here correctly found that this complaint does not allege a breach of the promise that was made. There is no claim under Section 502a1b of ERISA, which is the claim that one brings to say that you haven't gotten the benefits to which you're entitled under the plan. And the plaintiffs expressly allege that the plan promises it can pay benefits in precisely the form in which they were paid. They allege compliance with the terms of the plan, not a breach of them. Now, they try to do a bit of jujitsu here on appeal. You won't find the words void ab initio anywhere in the terms in their arguments to the district court, but they now say to this court that the reason that they can allege a breach of the bargain is that the court should first reform the contract because they think it's illegal, fill in the terms that they think are required by ERISA, no cross-plan offsets allowed, and then say that was the promise that was breached. But they are unable to identify even a single case that has ever held that you can establish a breach of the bargain standing based on a promise that was never actually made between the parties. What they are actually trying to do is allege illegality of the underlying contract, but a claim of illegality is subject to the concrete harm requirement under Article III. This is Spokio and this is TransUnion, both of which hold that a mere violation of a statute is not enough unless you can show concrete downstream harm. Turning to their second theory of standing, that they have a dominant Well, let's go into that one a little more. I understand what you're saying about Spokio and TransUnion, but they seem to be saying this is different because the violation of the statute necessarily means that the contract terms are void. Or the offset term is void, and therefore there's an injury under benefit of the bargain. Is that different from Spokio and TransUnion because the statutory violation has this contract as a matter of law? So under Article III, this is the quote from TransUnion. Under Article III, an injury in law is not an injury in fact. And the theory that they have spun out, which I think that Your Honor correctly articulated, is that the law has required that they get something other than the bargain that was there. That places them squarely within that holding of TransUnion that they cannot use, they cannot travel on a broken promise. No case has ever held that you can travel on a broken promise that was not in fact broken and that they don't allege was broken. That would put them in the realm of benefit of the bargain standing. To the extent that they're instead trying to travel on a theory of diminished value to them, that fails for much the same reason. If, as the Court was asking in its questions before, were they to prevail, this would not add a single dime to their own bank accounts. The providers, if they were to show up here, might have a theory of standing to themselves, because if they recovered, there would be additional dollars in their bank account. But their theory of standing based on this diminished value all actually collapses into the notion that there is some risk to them that their providers may one day proceed against them. If their providers don't, and they state the Peterson case. If you look at the Labor Department's brief in that case, footnote 3, the Labor Department says where a provider has agreed to accept the offset, it's fine, because there's no potential harm to the member. You'll see the same thing in the Scott case, where the plaintiffs in that case, and this is Judge Schultz's decision dismissing the second attempt at this on standing grounds, Judge Schultz said in that case that the plaintiffs had conceded that as long as the provider is okay with the payment, there's no possible harm to the plaintiff. And there is every reason to believe in this case that as with the billions of dollars of benefit payments paid before, these providers have accepted this as payment. They may have had a disagreement on the overpayment from a different plan. If they did, those providers received an opportunity to appeal that with authorized representation from their member, and they can take all of that all the way to a Federal district court. There is no judge, jury, and executioner issue there. You can pursue that as far as you want. There's no indication that they did that. Instead, the indication here is that these providers have been satisfied. There's been done nothing in all of that time. And they merely are alleging a purely speculative theory that the providers may one day do something, which, again, Spokio and Clapper definitively reject. Finally, turning to their last two theories of standing briefly, they allege that a breach of fiduciary duty should be treated differently by the courts, that where a breach of fiduciary duty is alleged, that that in and of itself, because under the common law, there was a recognition that that was a permissible theory to travel on without a showing of concrete harm, was squarely rejected by the Supreme Court in Tholl. It doesn't work where there's a defined benefit plan, as is the case here, because they don't have a vested interest in the plan's assets, only in their own bank accounts. And Tholl said, even though there were allegations of self-dealing and disloyalty, all of the things that plaintiffs talk about here, Tholl rejected that. And they also allege a theory of informational injury, that somehow they weren't given enough information to appeal the fact that their claim was paid by offset. TransUnion is dispositive on that claim because there's no downstream consequences. It's page 442 of TransUnion. There was an informational injury alleged there. And the Supreme Court held, without any downstream consequences to them, there's no ability to establish standing on that basis. Unless the Court has any further questions, I'll... Let's go back to this void ab initio theory. I take your argument that it isn't in the district court. I couldn't find it in the district court pleadings either, but it is argued on appeal. So I guess we have to assume for a minute that it's properly before us. But if it's — if they're correct that the — that ERISA forbids this offsetting, and if that means that the term is void ab initio, then why don't we have a contract that requires payment that has been breached? Because, Your Honor, where their entire theory depends — if you can't get to a broken promise without first establishing a violation of law, which is what that theory tries to do, then you're squarely within TransUnion. In order to travel on a theory of a violation of law, you have to show concrete harm. Judge Kavanaugh's words, no concrete harm, no injury in fact, can't get there that way. Imagine if, in the TransUnion case, TransUnion had made a promise to all of the people whose credit — remember, in TransUnion, TransUnion, it was a case under the FCRA, Fair Credit Reporting Act. TransUnion had collected a bunch of people's credit reporting information. For some people, they had published incorrect information showing that they were on a terrorist watch list. They said publication under the common law is sufficient to establish harm. For the 6,000-plus for whom it wasn't published, the Supreme Court said, you don't have standing. Now, to imagine — because no concrete harm. Now, to imagine TransUnion had promised those people that it would collect their records in exactly the way that it did, which the plaintiff there said was sloppy and in violation of the FCRA. What plaintiffs would be alleging, to make it parallel to this case, is the Court should rewrite that contract to instead have that contract promise that we would collect them according to better procedures that were compliant with the FCRA. That's not what TransUnion actually would have promised them. We're going to rewrite it to get you a new promise. And then say, because that rewritten promise was breached to be compliant with the FCRA, now plaintiffs have benefit of the bargain standing. Just inconceivable that anything other than no concrete harm, which is the exact same situation that they would be in, no harm to them whatsoever, never published, all dependent upon downstream third-party action. And so, Your Honor, the fact that, A, they're unable to identify a single case that has ever done this two-step process, that has first rewritten a contract and then allowed benefit of the bargain standing to be the basis on which they travel is the first reason the Court should reject it. I think if you look at TransUnion and its no concrete harm admonition and think about, it's just inconceivable that if TransUnion had said, these are the procedures we're going to apply, those, and that contract described the actual procedures TransUnion did apply in that case, that you would have gotten a different outcome in the Supreme Court, which determined these people had no concrete harm, not sufficient to travel on. Was the FCRA similar to ERISA in that terms that violate the statute are void? I, I believe that they would be, yes. And again, there's no, there is a way, if you think that a term of a contract is For example, they, they showed that there were formatting problems, and they showed that there were informational problems, and they showed that, or alleged that, that they had been sloppy in the way they collected information and drew upon the OFAC information. I think that a contract that had promised to follow the FCRA, or a contract that had promised to follow procedures that weren't compliant with the FCRA, I think that they would have had an argument, similar to the argument that they make here, that it was void. But that wouldn't have been sufficient to give them an ability to get to a reformation or a voiding argument without showing that they have concrete harm. Again, no case has ever allowed a plaintiff, without a showing of concrete harm to themselves, to make an argument for reformation of the contract. It's different in a situation where, for example, you have an argument that a noncompete agreement has some provision in it that is violative of the law and is restricting me from doing something that I should be allowed to do. There's my concrete harm. I'm not able to do something under the terms of the agreement. Therefore, I can come to the court and ask it to reform that contract based on my showing of concrete harm. But where there's merely an allegation that I should have gotten some different procedure, TransUnion says that's not enough. Where there's merely an argument, I should have gotten a different format, they dismissed all 8,000 plaintiffs except for Ramirez. They allowed Ramirez to travel on that because he could show he had been concretely harmed by being denied service at a car dealership. So it's a straightforward application of TransUnion, and there is no law that would suggest you can get to a reformation of a contract before getting to breach of the bargain stamping. Are there no further questions? Thank you. All right. Thank you for your argument. Your Honor, far from us taking an extreme position here, we're actually applying what's the clear-cut law in this circuit. The Federal Election Commission decision by the Supreme Court in 2022 specifically said for standing, we accept as valid the merits of a legal claim. You have to accept that to decide if there's injury. Our legal claim applying well-established authority is that when you're looking at a plan term, if it is inconsistent with ERISA, you cannot apply that term. And so our argument is if we win on the merits, it will be clear that you have to pay the cash, you can't use the cross-plan offsets. And Mr. Jacobs said there's no case. Well, there are many of them that support that legal theory, but there's also a case we cited from the Northern District of California, Doe v. UBH, United Behavioral Health. That was a summary judgment we won against United. In that case, the plan had a provision that said they could reduce the amount of benefits payable for behavioral health care services. We sued, claiming that was a violation of ERISA, of parity. We won summary judgment because the Court said they cannot apply that provision because it's illegal under ERISA. Therefore, you have to pay the benefits without that provision. That's what we're saying here, that because cross-plan offsets are illegal and are prohibited transactions, our argument is that when you interpret the plan, you can't interpret it applying that provision. And that means we were — our plaintiffs were injured because they did not receive the $8,000 to pay their doctors. They were left with risk because the doctors were given an offset for a debt that they disputed. Now, while — and under Mitchell, there's no balance of loan requirement, but there's also no indication the doctors have waived it. They're clearly at risk when this is all at issue. Under Peterson, under Thole, under Scott, in these cases, we think it's clear our plaintiffs should be entitled to a day in court, which has been precluded here. Thank you. All right. Thank you for your argument. Thank you to both counsel. The case is submitted, and the Court will file a decision in due course. Counsel are excused.